UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **OMAR TORO, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 17-532-JWD-RLB** |
| **COASTAL INDUSTRIES, LLC, ET AL.** | |

**ORDER**

Before the Court is Plaintiffs' Motion for Protective Order to Limit Inquires with an *In Terrorem* Effect (R. Doc. 15) and Defendants' Motion to Compel (R. Doc. 16). Both motions are opposed. (R. Docs. 22 and 23). Because of the overlapping nature of the issues raised, the Court considers these motions together.

**I.    Background**

Plaintiffs, Omar Toro and Elvin Antonio Cruz, instituted this action against Defendants, Coastal Industries, LLC and Kelly Sills, with the filing of their Complaint (R. Doc. 1) on August 9, 2017. Plaintiffs bring claims against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., alleging that Defendants failed to properly pay them overtime wages, and seeking liquidated damages, attorney's fees, interest, and costs.

Defendants proceeded with the scheduling of Plaintiffs' depositions to be held on January 5, 2018, beginning with Mr. Cruz. (R. Doc. 16-1 at 2). After issues arose during the deposition of Mr. Cruz, and the parties were unable to resolve them and move forward, the deposition was terminated, and left open to be continued at a later date. (R. Doc. 16-1 at 4). The filing of the Defendants' Motion to Compel (R. Doc. 16), and Plaintiffs' Motion for Protective Order (R. Doc. 15) ensued.

In the Motion to Compel, Defendants request permission by order of the Court to "inquire into Plaintiff's identities, alleged use of aliases during their employment with Defendants or related entities, and other legitimate areas of inquiry to which they [Plaintiffs] have opened the door through their own discovery, allegations, and partial testimony to date." (R. Doc. 16-1 at 4). In support of their position, Defendants argue that Fed. R. Civ. P. 30 permits a party to instruct a witness not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." (R. Doc. 16-1 at 4-5). Plaintiffs counter, in their Opposition as well as their Motion for Protective Order, that the Motion to Compel was unnecessary given Plaintiffs' attempts to resolve the Defendants' concerns, that the information sought by Defendants in the deposition is not relevant, and the possibility of disclosure of the information sought would have a "chilling" effect on their claims. (R. Doc. 22 at 2; R. Doc. 15). Plaintiffs also argue, as a threshold matter, that the Spanish-English translator was not registered or certified, and had no qualifications, and that this became "increasingly troublesome" during the course of the deposition of Mr. Cruz. (R. Doc. 15 at 2).

In the Motion for Protective Order, Plaintiffs request the issuance of a protective order that would limit inquiry into the following: (1) the immigration status of the Plaintiffs; (2) the social security numbers or other tax identification numbers of Plaintiffs; (3) the Plaintiffs' identification documents; (4) the use of aliases or other names for the purposes of employment; (5) the current address of Plaintiffs; (6) the Plaintiffs' employment history after their employment with Defendants; (7) the Plaintiffs' national origin, ethnicity, or religious beliefs; and (8) other documents or information likely to lead to discovery of the Plaintiffs' immigration status. (R. Doc. 15 at 4). Defendants argue that they "must be afforded a fair opportunity to question Plaintiffs about their identities, their other places of work, whether they filed taxes

and/or how they reported their earnings from their work with Defendants, their assertions that Defendants or affiliated companies forced them to [use] or provided them with false identification documents, and any follow-up questions Defendants choose to ask based on Plaintiffs <u>own</u> testimony." (R. Doc. 23 at 2) (emphasis in original).

## II. Discussion

### A. Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

### B. Analysis

#### 1. Plaintiffs' Motion for Protective Order

Rule 26(c) allows the Court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." Fed. R. Civ. P. 26(c)(1). "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending…" Fed. R. Civ. P. 26(c)(1). In addition, Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

### a. Translator

Plaintiffs suggest that, after the deposition was terminated, it was discovered that the translator was not registered or certified as an interpreter, and appeared to have no qualifications in the field, attaching a list of Certified Spanish Language Court Interpreters as well as a list of Registered Spanish Language Court Interpreters. (R. Doc. 15 at 2; R. Doc. 22-1). Plaintiffs also suggest that the parties "agreed to stop the deposition on this basis and to re-notice the deposition at a latter[sic] date with a qualified interpreter." (R. Doc. 15 at 3). Plaintiffs do not, however, request any relief specific to this purported issue, and Defendants make no argument in opposition. Further, while the Court notes from the deposition testimony provided that some problems regarding Mr. Cruz's understanding of the questions being asked seem apparent, it is difficult to determine whether those problems resulted solely or primarily from the translations. Plaintiffs' also claim that the deposition was terminated on the basis of objection to the translator, but this purported fact is not apparent from the transcript of the deposition.

Notwithstanding, the Court will advise the parties of the following. Fed. R. Evid. 604 states that an interpreter "must be qualified and must give an oath or affirmation to make a true translation." Additionally, 28 U.S.C. § 1827(c)(1) requires each United States district court to

4

maintain a list in the office of the clerk of all persons who have been certified as interpreters by the Director of the Administrative Office of the United States Courts and requires the clerk to "make the list of certified interpreters for judicial proceeding available upon request."

The Court would strongly suggest that, prior to the taking of Plaintiffs' re-scheduled depositions, the parties agree on and stipulate to an available interpreter from the lists attached to Plaintiffs' Opposition (R. Doc. 22; R. Doc. 22-1) or the lists available in the office of the clerk pursuant to 28 U.S.C. § 1827(c)(1) in an effort to avoid any potential disputes arising from the qualifications of the interpreter. No additional action will be taken by the Court on this issue at this time.

### b. Plaintiffs' Immigration Status

Plaintiffs cite the case of *In re Reyes*, 814 F.2d 168 (5th Cir. 1987), for the proposition that the Fifth Circuit has faced the issue before the Court. Indeed, as the Fifth Circuit notes, "it is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant." *In re Reyes*, 814 F.2d at 170. The *In re Reyes* court issued a writ of mandamus reversing a district court's order for the petitioners to respond to certain questions, including their citizenship or immigration status. 814 F.2d at 170. The Defendants herein, in Opposition, concede they "do not seek to question Plaintiffs about their 'immigration status' specifically, or their immigration status as it relates to coverage under the FLSA." (R. Doc. 23 at 2). Additionally, as the protections of the FLSA are afforded to both citizens and aliens alike, regardless of whether they are documented or undocumented, Plaintiffs' citizenship and immigration status are irrelevant.

Accordingly, this portion of Plaintiffs' Motion for Protective Order is unopposed, and considering the governing jurisprudence, the Court finds good cause for the requested protection.

5

Information sought with regard to Plaintiffs' immigration status and/or citizenship is not relevant, and would potentially cause significant harm or threat of harm that may influence Plaintiffs' desire to continue to prosecute their claims. Thus, in the re-scheduled deposition of Mr. Cruz and the deposition of Mr. Toro, Defendants are prohibited from asking any questions regarding Plaintiffs' citizenship or immigration status. Plaintiffs' Motion for Protective Order is granted insofar as the citizenship and immigration status of Plaintiffs is protected from discovery in the re-scheduled depositions of Plaintiffs.

Plaintiffs also submit a general request for a protective order barring discovery of "other documents or information likely to lead to discovery of the Plaintiffs' immigration status." (R. Doc. 15 at 2). The Court has already found that Plaintiffs' immigration status is not relevant to the claims made in this litigation. However, Plaintiffs do not provide the Court with any specificity regarding the potential "other documents or information" that would "likely lead to discovery of the Plaintiffs' immigration status," nor do they provide any specific supporting law or argument. Further, Defendants have represented that "they do not seek to question Plaintiffs about their 'immigration status' specifically, or their immigration status as it relates to coverage under the FLSA." (R. Doc. 23 at 2). Given these facts, the Court will not entertain such a vague request to protect "other documents or information likely to lead to discovery of the Plaintiffs' immigration status." *See* Section II.B.1.i., *infra*.

### c. Social Security and Tax ID Numbers

Plaintiffs also request an order protecting their Social Security or other tax identification numbers from discovery during the re-scheduled depositions. (R. Doc. 15 at 2). In support of their argument, Plaintiffs assert that discovery of this information would have an *in terrorem* effect that "could result in a chilling of this litigation." (R. Doc. 15-1 at 6). Defendants present

no specific argument in opposition[1] other than to suggest, in the context of names and aliases, that "being able to identify all work Plaintiffs performed for Defendants under any name is relevant in a lawsuit alleging wage and hour violations." (R. Doc. 16-1 at 5). The Court agrees, as set forth in Section II.B.1.e., that all of the identities or aliases for which Plaintiffs used during their employment or work in connection with the Defendants are relevant and discoverable. Defendants do not, however, make any showing that Social Security or tax identification numbers are necessary in order to achieve that goal. Absent any particularized showing that Defendants are unable to identify a particular named plaintiff or claimant or to obtain a particular plaintiff's or claimant's records without disclosure of a social security number, the Court is unwilling to order that this information be disclosed. Accordingly, Plaintiffs' Motion for Protective Order (R. Doc. 15) as to the Social Security and tax identification numbers of Plaintiffs is granted, and Defendants shall not inquire as to the Social Security or tax identification numbers of Plaintiffs during their re-scheduled depositions.

### d. Plaintiffs' Identification Documents

Plaintiffs broadly request a protective order over their "identification documents," but it is unclear from the briefing exactly what documents or types of documents, or inquiries regarding these documents or types of documents Plaintiffs seek to protect. Plaintiffs also request a protective order covering their "use of aliases or other names for the purposes of employment" and for "social security numbers or other tax identification numbers of Plaintiffs." (R. Doc. 15 at 2). Plaintiffs also offer in Opposition to the Motion to Compel that they "will provide copies of their current IDs," but this offer appears to be conditioned upon being "by way of a settlement agreement." (R. Doc. 22 at 2; R. Doc. 22-3). To the extent Plaintiffs' request for a

---

[1] Defendants seek to compel Plaintiffs to respond as to whether they filed tax returns. This will be addressed in the context of Defendants' Motion to Compel, *infra*.

protective order covering identification documents is covered by Plaintiffs' request to protect Social Security numbers or other tax identification numbers, or Plaintiffs' use of aliases or other names for the purposes of employment, the Court's position and ruling is set forth in Sections II.B.1.c., and II.B.1.e., respectively.

Accordingly, Plaintiffs' Motion for Protective Order is denied in part and granted in part. To the extent Plaintiffs' request for a protective order covers Plaintiffs' identification documents that are not Social Security or tax identification documents that were used in connection with work or employment involving the Defendants, or documents reflecting names or aliases underlying the claims brought by Plaintiffs herein, that information is discoverable. Any identification documents or other inquiry regarding names or identities used in any other context is not relevant and discovery on this basis is not permitted.

### e. Plaintiffs' Use of Aliases or Other Names for Employment Purposes

After Plaintiff Cruz provided two versions of his name at the beginning of his deposition, counsel for Defendants asked whether he had "ever gone by any nicknames or any other names." (R. Doc. 16-4 at 6). Counsel for Mr. Cruz objected to the questioning on the grounds of relevance and instructed Mr. Cruz not to respond. (R. Doc. 16-4 at 6). Defendants suggest in briefing that the first pay stubs produced by Plaintiffs were for a person by the name of Jose R. Nievez Vizcarrondo, and that, upon inquiry, counsel for Plaintiffs stated, "I can confirm that Omar Toro was required to use the name Jose R. Nievez Vizcarrando… I do not have confirmation of the Cruz alias." (R. Doc. 16-1 at 2). Plaintiffs note in Opposition to Defendants' Motion to Compel that they offered to stipulate that "the only claims Mr. Cruz is bringing are associated with his time working for Coastal Industries, LLC under the name Elvin Cruz." (R. Doc. 22 at 2). Defendants also argue, in their Motion to Compel, that inquiry into circumstances

8

surrounding Plaintiffs' work for Defendants under any names is necessary "so that the Plaintiffs' claims can be properly evaluated, [and] so that Defendants may properly defend against the Plaintiffs' allegations of unlawful behavior." (R. Doc. 16-1 at 6-7). Defendants also want to ensure that they are not subject to any later claims by a particular individual based on any other alias used.

Generally speaking, the inquiry as to a deponent's name, including any nicknames, aliases, and/or previous names is generic background information collected at the beginning of a typical deposition. Here, prior to the deposition, counsel for Defendants received communication from counsel for Plaintiffs regarding the identification of certain pay stubs, which justifiably raised a concern as to the universe of recovery sought by Plaintiffs from Defendants arising out of their work. More specifically, it became particularly relevant to the claims made by Plaintiffs for Defendants to be able to identify all of the names under which Plaintiffs were seeking overtime payment. The relevance of this line of questioning was compounded when Plaintiff Cruz responded with two versions of his own name at the beginning of the deposition. Plaintiffs have not asserted any privilege that might be applicable to this line of questioning, and the Court is unaware of any. In addition, while the briefing and attached exhibits contain a suggestion that counsel for Plaintiffs offered to stipulate as to the names under which Plaintiff Cruz was seeking recovery for overtime wages, there is no similar indication that such a stipulation has been asserted as to Plaintiff Toro. Furthermore, while Plaintiffs seem to have agreed to stipulate, there is no evidence that a binding stipulation has been executed that would render the information sought by Defendants irrelevant or limit the relevant scope of discovery Defendants seek regarding the names and aliases of Plaintiffs.

Given the lack of privileged nature of this information, as well as the Court's finding of its relevance, this line of questioning is appropriate. Plaintiffs make no showing of harm that the response to Defendants' questioning in the re-scheduled deposition would cause that would outweigh Defendants' relevant interest in same. Accordingly, Plaintiffs' Motion for Protective Order (R. Doc. 15) is denied as to any and all names, nicknames, aliases, or variations thereof used by Plaintiffs in connection to their employment or work with Defendants and/or their claims for wages in this litigation.

### f. Current Address of Plaintiffs

Plaintiffs suggest the Court's protective order should include protection for Plaintiffs from the Defendants inquiring as to their current addresses, though they provide no supporting law or argument other than their blanket suggestion that the exposure of this information would have an *in terrorem* effect on this litigation. At the same time, Defendants make no argument in opposition to the Plaintiffs' request, nor do Defendants seek to compel response to this inquiry in the future depositions. Further, Defendants have represented that they do not seek to "question Plaintiffs about anything for the purpose of oppression and embarrassment." (R. Doc. 23 at 2).

Notwithstanding the lack of law or argument supporting the purported need for protection from disclosure of Plaintiffs' current addresses or the justification to compel the disclosure, the Court can find no circumstances under which such information has any relevance to the claims brought by Plaintiffs in this litigation. Plaintiffs generally submit that disclosure of their current addresses would have an *in terrorem* effect on this litigation, and the Court finds that argument compelling, particularly when balanced against the absence of any relevance of the information to the claims or defenses.

For example, in *Baca v. Brother's Fried Chicken*, 2009 WL 1349783, at *1 (E.D. La. May 13, 2009), the court stated that, "[i]nasmuch as the protections provided by the FLSA apply to undocumented aliens, the plaintiff's immigration status, Social Security numbers *and addresses* are not relevant." (Emphasis added). The Court agrees with the findings of the *Baca* court on this issue. As noted above, relief pursuant to the FLSA is applicable to citizens and aliens alike, whether documented or undocumented. *See In re Reyes*, 814 F.2d 168 (5th Cir. 1987). Sensitive to the possibility that the disclosure of current addresses could potentially reveal immigration status (or carry the implication that such address could be provided to the authorities), the threat of having to reveal such information may have a chilling effect on this litigation. Balanced against an absence of any relevance to the claims or defenses, the Court finds that the current addresses of Plaintiffs should be protected from discovery.

Accordingly, insofar as Plaintiffs' Motion for Protective Order (R. Doc. 15) seeks to protect the current address(es) of Plaintiffs from discovery in the re-scheduled depositions, the motion is granted.

### g. Plaintiffs' Post-Coastal Employment History

Plaintiffs argue that their employment history subsequent to their employment with Defendants should be protected from discovery in their re-scheduled depositions. (R. Doc. 15 at 2). In so arguing, Plaintiffs suggest that disclosure of their post-Coastal employment history would have an *in terrorem* effect, but provide the Court no information of how this might be so. Plaintiffs argue generally that the case of *Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004), perfectly explores the very issue, but the Court notes that the *Rivera* court upheld a magistrate judge's ruling protecting the plaintiff's immigration status from discovery, not all of the other categories of information Plaintiffs also seek to have protected under the *Rivera* umbrella.

Once again, notwithstanding the inapplicability of the law cited by Plaintiffs, the Court can find no circumstances under which their post-Coastal employment has any relevance to the claims brought by Plaintiffs in this litigation.

Accordingly, Plaintiffs' Motion for Protective Order (R. Doc. 15) is granted insofar as it seeks to protect Plaintiffs' post-Coastal employment history from disclosure.

### h. Plaintiffs' National Origin, Ethnicity, or Religious Beliefs

Plaintiffs seek to protect from discovery Plaintiffs' national origin, ethnicity, and religious beliefs. (R. Doc. 15 at 2). Whether a person hails from a foreign nation is not the same question as whether a person is in this country legally. However, the Court notes that the distinction between Plaintiffs' national origin and their immigration status (if any) is slight. Given that aliens and citizens alike can recover under the FLSA, the Court finds that Plaintiffs' national origin, ethnicity, and religious beliefs have no relevance to the claims brought herein, and the potential for any confusion of this information as information regarding Plaintiffs' immigration status is enough to warrant a finding of good cause and protection from discovery in this matter. Accordingly, Plaintiffs' Motion for Protective Order (R. Doc. 15) is granted insofar as it seeks to protect from discovery Plaintiffs' national origin, ethnicity, or religious beliefs in their re-scheduled depositions.

### i. Other Documents or Information Likely to Lead to Discovery of the Plaintiffs Immigration Status

Plaintiffs seek protection of a catch-all category incorporating "other documents or information likely to lead to discovery of the Plaintiffs' immigration status." (R. Doc. 15 at 2). Plaintiffs make no showing of specificity as to what exactly this category of information would include, nor have they made any showing of "good cause" to protect this vague category as they

have made no showing of what types of documents or information would be "likely to lead" to discovery of their immigration status.

"Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). Without providing the Court any particular and specific justification of the need to protect from discovery unspecified "documents or information likely to lead to discovery of the Plaintiffs' immigration status," the Court finds Plaintiffs have not established the required good cause. Thus, Plaintiffs' Motion for Protective Order (R. Doc. 15), insofar as Plaintiffs seek to protect "other documents or information likely to lead to discovery of the Plaintiffs' immigration status," is denied. The Court notes, however, that the instant Order should provide sufficient guidance to the parties as to the parameters of permissible discovery as it pertains to the various records and identifying information regarding the Plaintiffs and the distinctions drawn as they pertain to employment with the Defendants. The Court has also made it clear that tax identifying numbers, social security numbers, and immigration status are off limits.

### 2. Defendants' Motion to Compel

#### a. Plaintiffs' Identities and Use of Aliases

Defendants' Motion to Compel (R. Doc. 16) is granted insofar as Defendants seek to compel Plaintiffs to respond in deposition to questions regarding their names and aliases used for the purposes of employment with Defendants for the same reasons set forth in Section II.B.1.e. above.

### b. Plaintiffs' pre-Coastal Employment

Defendants' Motion to Compel (R. Doc. 16) is denied insofar as Defendants seek to compel Plaintiffs to respond in deposition to questions regarding their pre-Coastal employment for the same reasons set forth in Section II.B.1.g. above.

### c. Plaintiffs' post-Coastal Employment

Defendants' Motion to Compel (R. Doc. 16) is denied insofar as Defendants seek to compel Plaintiffs to respond in deposition to questions regarding their post-Coastal employment for the same reasons set forth in Section II.B.1.g. above.

### d. Plaintiffs' Filing of Tax Returns

Defendants ask the Court to compel Plaintiffs to respond to inquiry regarding whether they filed tax returns. Defendants assert that they "must be afforded a fair opportunity to question Plaintiffs about… whether they filed taxes and/or how they reported their earnings from their work with Defendants" and that they "should be permitted to explore the entire scope of potential wage liability surrounding the work of the individual who sometimes goes by the name Elvin Antonio Cruz." (R. Doc. 23 at 2).

Defendants suggest that "whether someone who alleges he is an employee rather than an independent contractor files tax returns… are basic questions that should be permitted." (R. Doc. 16-1 at 6). Defendants do not, however, provide any law or argument as to why this is purportedly so, but the Court notes that Defendants have denied the Plaintiffs "were their employees and deny any liability" to Plaintiffs. (R. Doc. 9 at 1). Presumably, Defendants intend to suggest that Plaintiffs' responses regarding their tax returns would assist in the determination of whether Plaintiffs were employees of Defendants or independent contractors. The substantive issue of whether Plaintiffs were employees or independent contractors for purposes of the FLSA

14

is not before the Court at this time, but the potential relevance of that information, balanced against Plaintiffs' interest in keep such information private is.

In *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 332 (5th Cir. 1987), for example, the Fifth Circuit considered a welder's tax returns in the context of whether the welder's profits depended on his ability to control his own costs, and noted that "[t]o determine employee status under the FLSA, we focus on whether the alleged employee, as a matter of economic reality, is economically dependent upon the business to which he renders his services." In *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 665 (5th Cir. 1983), the Fifth Circuit found the plaintiffs to be employees under the FLSA despite them filing federal income tax returns on IRS forms as self-employed individuals, among other factors addressed. The Fifth Circuit went on to state the following: "Likewise, the fact that they… listed themselves as self-employed on their tax returns… does not tip the balance in favor of independent contractor status where, as here, the economic realities of the situation indicate that the employee depended upon the employer for his livelihood, as tested by the cited criteria. A person's subjective opinion that he is a businessman rather than an employee does not change his status." *Robicheaux*, 697 F.2d 662, 667 (5th Cir. 1983).

With little doubt, the filing of tax returns has been considered in the analysis of whether a person is an employee or an independent contractor, specifically whether a person filed his taxes as self-employed. Notwithstanding that fact, Plaintiffs make no specific argument as to their tax returns, but do argue that their tax identification numbers should be protected because disclosure of same would have an *in terrorem* effect. (R. Doc. 15-1 at 8). The Court is not convinced, however, of how the disclosure of Plaintiffs' tax returns, or the threat of disclosure of Plaintiffs' tax returns, would have a chilling effect on the litigation.

15

Accordingly, the Court declines to extend the reasoning in the *Rivera* case, relied upon by Plaintiffs, to Plaintiffs' tax returns insofar as those returns would reflect whether they filed as self-employed. The Court does not agree with Plaintiffs that whether they filed taxes and/or how they reported their earnings from their work with Defendants is irrelevant. However, notwithstanding this finding, the Court notes that information found to be subject to protection elsewhere in this Order, including citizenship, addresses, Social Security numbers, and tax identifying numbers, insofar as it would appear on Plaintiffs' tax returns, remains subject to protection in the form of redaction. Further, the inquiry surrounding Plaintiff's tax returns is limited to the time period in which Plaintiffs worked for Defendant.

Accordingly, Defendants' Motion to Compel (R. Doc. 16) is granted insofar as Defendants seek to question Plaintiffs at their re-scheduled depositions regarding whether they filed any tax returns covering the time period in connection with their work at issue in this litigation, and how they identified their employment status on such returns. If no such returns were filed, the inquiry is over. If returns were filed, any such returns may also be produced, subject to redaction of any social security numbers or other tax identification numbers, citizenship, addresses, or any other information appearing on said tax returns that has been explicitly subject to protection from discovery with this Order.

### III. Conclusion

Summarily, Defendants are entitled to relevant discovery that would assist them in identifying the universe of their potential liability, which interest is to be balanced with the Plaintiffs' interest in protecting irrelevant and/or highly sensitive information that may be revealed.

Based on the foregoing,

**IT IS ORDERED** that Plaintiffs' Motion for Protective Order to Limit Inquires with an *in Terrorem* Effect (R. Doc. 15) and Defendants' Motion to Compel (R. Doc. 16) are both **GRANTED IN PART** and **DENIED IN PART**, as set forth in detail above. Each party shall bear its own costs.

Signed in Baton Rouge, Louisiana, on May 4, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**